**Larmicia and Solomon WOOD, Plaintiffs,**

v.

**UNITED AIR LINES, INC., and Trans World Airlines, Inc., Defendants.**

**Civ. A. No. 61 C 620.**

United States District Court
E. D. New York.
Jan. 24, 1963.

See also 216 F.Supp. 346.

Morris Hirschhorn, New York City, for plaintiffs; Harry A. Gair and Charles F. Krause, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant, United Air Lines, Inc.; Walter E. Rutherford, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant, Trans World Airlines, Inc.; P. G. Pennoyer, Jr., New York City, of counsel.

ABRUZZO, District Judge.

The plaintiffs move to dismiss their complaint against United Air Lines, Inc., hereinafter referred to as UAL, and Trans World Airlines, Inc., hereinafter referred to as TWA, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure without prejudice and without costs on the ground that diversity of citizenship does not exist against the defendant TWA. This action was commenced on August 29, 1961.

Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

The plaintiffs, husband and wife, seek to recover $15,000 property damages to an apartment in Brooklyn, New York; $400,000 damages for personal injuries allegedly sustained by the plaintiff, Larmicia Wood; and Solomon Wood, her husband, seeks $100,000 for loss of consortium. The action arose as a result of a mid-air collision of two airplanes owned by the defendants, UAL and TWA, over Staten Island, New York, on December 16, 1960. Both planes crashed. The TWA plane crashed in Staten Island and the UAL plane in Brooklyn, New York. All passengers perished. The plaintiffs occupied an apartment in Brooklyn, New York, which was allegedly struck and destroyed by the UAL plane in its descent.

The plaintiffs base their action against UAL and TWA on general grounds of negligence and carelessness set forth in great detail in the complaint. In the first paragraph of the complaint the plaintiffs allege that they are citizens of the State of New York and the defendants UAL and TWA are citizens of the State of Delaware, doing business within the State of New York, and that this Court has jurisdiction.

In their answers to this complaint, both UAL and TWA deny any knowledge or information sufficient to form a belief as to the allegations contained in the first paragraph of the complaint, except that UAL admits that it is a corporation duly organized and existing under the laws of the State of Delaware and TWA admits that it is a citizen of the State of Delaware, and both admit that they are doing business in the State of New York.

The pleadings would strongly suggest jurisdiction in this Court.

For the purpose of this opinion we will characterize the instant cause of action as Action No. 1.

The plaintiffs also instituted a similar action in this Court against the United States of America (Index No. 61 C 276) under the Federal Tort Claims Act to recover the same damages they are seeking to recover in the Action No. 1, alleging the same causes and the same issues arising out of the same airplane collision. The United States of America impleaded both airlines as parties-defendants in its case. The plaintiffs charge the United States of America with various items of negligence and seek damages from the United States of America because of such negligence.

For the purpose of this opinion, the plaintiffs' action against the United States of America will be referred to as Action No. 2.

The two actions instituted by the plaintiffs in this Court are not the only actions instituted by them to recover damages as a result of the collision. They commenced an action on January 12, 1961, in the United States District Court for the Southern District of New York against all three defendants. On April 3, 1961, the complaint was dismissed as against the United States of America on the ground that proper venue did not exist under the Federal Tort Claims Act. Subsequently the action was discontinued as against UAL and TWA by stipulation. This action will be hereinafter referred to as Action No. 3.

On April 17, 1961, the same day that the Tort Claims action was commenced against the United States of America in this Court, the plaintiffs commenced an action in the Supreme Court of the State of New York, County of Kings, against UAL and TWA alleging the same claims they allege in Action No. 1. Various preliminary proceedings were held in the state court action including the granting of an order permitting the plaintiffs to amend their complaint to plead a cause of action in trespass. They moved for summary judgment on the claim of trespass liability but their motion was denied. The denial was affirmed by the Appellate Division of the Supreme Court. The Court of Appeals of the State of New York denied their application for leave to appeal the Appellate Division ruling on June 12, 1962, and a motion for reargument was also denied. This state court action will be referred to as Action No. 4.

Approximately 110 actions arising out of this midair collision have been commenced in this district and all have been assigned to me for all purposes pursuant to Rule 2 of the General Rules for the Southern and Eastern Districts of New York.

The instant motion is grounded on Section 1332(c), Title 28 U.S.C.A., which reads as follows:

"§ *1332. Diversity of citizenship; amount in controversy; costs*

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

The very question at issue here was decided by Judge Bruchhausen in the case of Clothier v. United Air Lines, Inc., D. C., 196 F.Supp. 435. The Clothier case arose out of this same air collision. UAL, TWA and the United States of America were defendants. In Clothier TWA moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for an order dismissing the action as to it on the ground of lack of jurisdiction of the subject matter, contending that its principal place of business was in New York. Judge Bruchhausen denied the motion and the action is still pending. None of the parties asked that the question be certified to the United States Court of Appeals and his determination was not reviewed.

In Judge Bruchhausen's well-reasoned opinion the following facts appeared.

In listing its corporate setup, TWA named nine of its officers who performed their duties in New York, its president and eight vice presidents in charge of various functions or departments. Clothier in opposing TWA's motion listed various facts including, that the Civil Aeronautics Board regulating and licensing TWA stated that TWA's principal officers were in Missouri; that its Chairman of the Board was elected in Missouri; that it employed over 18,000 employees, 35% of whom were in Missouri and only 19% in New York; that although nine officers performed their duties in New York, five headed departments that possessed minor responsibilities, an extremely limited number of personnel and, in addition, three of these vice presidents spent half or more of their time outside of New York; that executives and their departments, Technical Services and Transportation, are centered in Missouri and form the hub of TWA's activities around which everything else revolves; that these two departments employ 75% of all corporate personnel and each of these two departments has its head and almost all of its executives in Missouri; and that the Finance Department has 91% of its employees and the overwhelming number of its executives in Missouri.

In balancing all of the activities performed in both states, Judge Bruchhausen held that TWA's center of corporate activity was in Missouri and that its corporate life as a carrier depended upon the activities performed in Missouri. He concluded, "The inescapable conclusion from all these facts is that the principal

place of business of TWA is in Missouri. See Kelly v. United States Steel Corporation, 3 Cir., 284 F.2d 850."

## PLAINTIFFS' ARGUMENT IN SUPPORT OF MOTION

The motion to dismiss Action No. 1 (Index No. 61 C 620) is based upon the claim of the plaintiffs that no diversity of citizenship exists between them and TWA and, therefore, this Court lacks jurisdiction over the subject matter.

Notwithstanding Clothier, plaintiffs in support of their motion contend that additional information set forth in a stipulation of facts executed by their attorney and the attorneys for TWA should cause this Court to find that TWA's place of business is in New York.

The following is a summary of the additional information contained in the stipulation: (1) No reference was made in Clothier to information contained in World Aviation Directory which listed TWA Executive and Sales offices at 380 Madison Avenue, New York; the cable address was also listed as New York, N. Y., and of thirty-seven principal officers listed twenty-three are in New York, ten in Kansas City, Missouri, and four in Washington, D. C.; (2) no reference was made to information contained in the Official Airline Guide used as a handbook by travellers; (3) there was a systematic exclusion of titles located in New York other than top executives, in that the location of the assistant treasurer and five assistant vice presidents, all located in New York, were not mentioned in the Clothier papers although seven Kansas City vice presidents were; this same exclusion is apparent with regard to the Finance Department, the Industrial Relations Department and Planning and Research Department and, in addition, three departments located in New York, namely, Public Relations, System General Manager and the Sales Department, were not referred to in Clothier; (4) it is apparent from the stipulation that with the addition of these three departments located in New York and which were excluded from Clothier, TWA employs approximately 23% of its personnel in New York and approximately 37% in Missouri; (5) job descriptions from the TWA Manual of Organization were submitted in Clothier only with regard to titles in Missouri; (6) statistics referred to in Exhibits "D" and "E" of the stipulation were not referred to in Clothier (Exhibit "D" shows TWA's passenger ticket sales for the first six months of 1961 and Exhibit "E" shows the scheduled service flights for the quarter ending June 30, 1961); and (7) seven titles appeared in the World Aviation Directory as being located in New York when this action against UAL and TWA was commenced but TWA cannot or will not produce the job descriptions. These titles refer to three vice presidents and four assistant vice presidents of various departments.

## TWA'S REBUTTAL

TWA concedes that it was incorporated by virtue of the laws of the State of Delaware but contends that its principal place of business is in the State of Missouri.

In opposing the plaintiffs' application to dismiss this action, TWA relies on the Clothier opinion as determinative of the jurisdictional question. It contends that nothing in the stipulation of facts nor the exhibits annexed thereto alters Judge Bruchhausen's conclusion; that nothing new of significance has been added and, if anything, the factual conclusions in Clothier remain valid and are strengthened by the additional facts in the stipulation; that an itemization of fixed tangible personal property of TWA, as evidenced by Exhibit "C" in the affidavit of Walter E. Rutherford, Esq., an attorney associated with the law firm defending TWA, reveals that TWA has more than four times as much fixed tangible personal property in Missouri as it has in New York (including a conglomeration of material other than the aircraft itself) which is a necessary adjunct to the actual operation of an airlines; the fact that TWA files its Federal Income Tax Returns in Missouri is significant in the

light of the requirements of Section 6091 (b)(2) of the Internal Revenue Code (Title 26 U.S.C.A.) which requires a corporation to file in the district in which is located its principal place of business; and also that its Annual Statements list Kansas City, Missouri, as its home office or general office; that transportation is the end product of TWA's business and the maintenance of a transportation network is to be distinguished from a manufacturing or mining business; that the transportation business requires a hub or center from which the operation must be directed; and that Kansas City, Missouri, is the hub or center of TWA's operations and it is there that its Transportation and Technical Services Departments are located under the command of a vice president and general transportation manager and a vice president in charge of Technical Services.

The various factors set forth in the Rutherford affidavit evidence that nothing new of significance has been added in the stipulation of facts relied upon by the plaintiffs which would alter Judge Bruchhausen's conclusion. The fixed tangible personal property in Missouri is four times larger than in New York and is a necessary adjunct to the operation of TWA. TWA by filing its Federal Income Tax Returns in compliance with Section 6091(b)(2), Title 26 U.S.C.A., in Missouri emphasizes that its principal place of business is in Missouri and it similarly stresses this fact by listing Kansas City, Missouri, as its home office or general office in its Annual Statements. It is inescapable that transportation is the main business of TWA. It is one of the largest passenger carriers with worldwide operations and, therefore, the location of its Transportation and Technical Services Departments employing 78% of its employees in these two departments in Missouri points to the conclusion that TWA's business by way of its activities is centered in Missouri and not in New York.

The balance of activity clearly points to Missouri. Neither the stipulation of facts nor an affidavit designated as "second supplemental affidavit in support of motion to dismiss," submitted by Charles F. Krause, Esq., an associate of Speiser, Shumate, Geoghan and Law, of Counsel to Harry A. Gair, Esq., trial counsel for plaintiffs, alters this fact. The stipulation of facts lists New York City as the place where TWA has its executive and sales offices and it was so stated in Clothier. Mr. Krause alleges that the cable address is New York but the exhibits annexed to the stipulation state that the cable address is St. Louis, Missouri. TWA does not deny that the bulk of its senior executive officers have their offices in New York but that is not the touchstone or criterion. The locality where the greatest amount of its activities are performed is the criterion. The fact that TWA flights from New York, domestic and foreign, exceeded those from Missouri by approximately 6,200,-000 and 7,000,000, respectively, is also no criterion in that domestic flights from California exceeded those from New York by approximately 11,300,000 during the period evidenced by Exhibit "D." Exhibit "E," if anything, favors TWA. It shows that of scheduled service flights (not otherwise identified) from nine American cities, Chicago has the largest number of flights and St. Louis the second largest number. The stipulation of facts also supports the conclusion that the center of activities of TWA is in Missouri where overall it has 14% more personnel than in New York (evidenced by Exhibit "B" of the stipulation), 23% in New York as against 37% in Missouri.

## UAL'S REBUTTAL

UAL also opposes plaintiffs' motion to dismiss, contending that the plaintiffs have had ample time to choose their forum and should not be permitted to further harass the defendants and that a dismissal of this action would be prejudicial to it in that (1) the plaintiffs are claiming that either UAL, TWA or the United States of America, or all three, are responsible for this accident; based on these allegations they all could be joint tortfeasors and if they are, then, pursuant to the provisions of Section 211-

a of the New York Civil Practice Act (now Section 1401 of the new Civil Practice Law and Rules), if one defendant pays more than his proportionate share, it may obtain a judgment against the other defendants for the excess that it has paid; this is a substantial right and will be lost if the motion to dismiss is granted in that the United States of America is not and cannot be a party to the action pending in the state court; (2) the granting of this motion will still leave UAL and TWA having to defend on the very same issues in the state court Action No. 4 which has not been discontinued and plaintiffs have not indicated that they plan to discontinue the action (UAL and TWA were impleaded by the United States of America in Action No. 2 which action cannot be removed from this Court); and it would be grossly unfair to compel UAL and TWA to defend themselves twice when this Court, in the exercise of its discretion, could have the entire issue tried in one consolidated action.

UAL's position is tenable and well taken.

In determining the question of jurisdiction, some excerpts from Kelly v. United States Steel Corp., 284 F.2d 850 (C.A.3d), might be very enlightening.

The Court stated (p. 852):

"During the argument in this Court the statement was made that the location of the corporation's principal place of business is a question of fact. To a certain extent this is true because facts about an individual corporation have a great deal to do in determining whether that corporation has its principal place of business in a given state. * * * *"

and (p. 853):

"In the absence of a simple single test we are forced to analyze our question further and endeavor to pick out as best we can the factor or combination of factors that seem to point to one place as the 'principal' place of business. * * * *"

The motion made by the plaintiffs must be denied and the Court makes the following findings:

■ 1. That because the complaint alleges diversity of citizenship and TWA's answer to all intents and purposes admits diversity, the pleadings foreclose this question.

■ 2. That the Clothier case, supra, not having been reviewed, is the law of this case.

■ 3. That the conclusion reached in Clothier, that the principal place of business of TWA is in Missouri, is correct and that the additional facts presented here compel the same conclusion.

■ 4. That TWA, in all cases arising out of this particular collision, is foreclosed from claiming at any time in the future that its principal place of business is not in Missouri.

5. That the corporate activities of TWA show clearly that Missouri is the hub or center of its business and diversity of citizenship exists.

An order may be entered in strict conformity with this opinion and shall contain the findings made herein.

The order may contain a provision that a controlling question of law is involved and that, therefore, an immediate appeal from the order may materially advance the ultimate termination of all litigation arising out of the airplane collision in conformity with the provisions of Section 1292(b), Title 28 U.S.C.A.